IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 24, 2010

## LEVI BATTLE, III v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-A-519      Cheryl Blackburn, Judge**

_____

**No. M2009-00949-CCA-R3-PC - Filed May 12, 2010**

_____

A Davidson County jury convicted the Petitioner, Levi Battle, III, of possession of twenty-six grams or more of cocaine with intent to sell or deliver, and the trial court sentenced him as a career offender to thirty years in the Tennessee Department of Correction. On direct appeal, the Petitioner challenged the denial of his motion to suppress, and we affirmed the trial court's judgment. *State v. Levi Battle, III*, No. M2006-00288-CCA-R3-CD, 2007 WL 957207, at *1 (Tenn. Crim. App., at Nashville, Mar. 29, 2007), *perm. app. denied* (Tenn. Aug. 13, 2007). The Petitioner then filed a petition for post-conviction relief in which he alleged that he received the ineffective assistance of counsel, and, after a hearing, the post-conviction court dismissed the petition. After a thorough review of the record and applicable authorities, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JERRY L. SMITH, and THOMAS T. WOODALL, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the Appellant, Levi Battle, III.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Rob McGuire, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**
**A. Background**

In our opinion on the Petitioner's direct appeal from his conviction, we recited the underlying facts supporting his conviction as follows:

This case arises from the discovery of cocaine and crack cocaine in the Defendant's vehicle while in the parking lot of the Music City Motor Inn in Davidson County. The Defendant was indicted for possession with the intent to sell or deliver 300 grams or more of cocaine, a Class A felony. *See* Tenn. Code Ann. § 39-17-417(j)(5). The Defendant filed a motion to suppress, and the trial court held a hearing to determine the validity of the search and seizure of the evidence.

At the motion to suppress hearing, Officer Justin Fox of the Nashville Metropolitan Police Department testified about his encounter with the Defendant on August 22, 2002:

I was sitting at the Music City Motor Inn on Murfreesboro Road at Fesslers, and I was sitting in a parking lot, which is a high drug and prostitution area. I mean, it was shut down due to that [shortly after this incident occurred].

I was sitting there observing vehicles and people and I observed the [D]efendant . . . sitting in his vehicle [for about five minutes] at which point I [then] observed him get out of his vehicle, look back at myself and another officer who was sitting there, and he looked at the officers and walked away from his vehicle.

At that point, he walks back to his vehicle, looks at the officers, and stood at his door and started to get in and didn't, and walked back away and walked back and then opens his door and does a throwing motion in his car, as though he threw something down in his car.

This whole time, he is watching the officers. He then walks away from his car, starts walking back towards the stairwell, which goes up to the second level. The whole time, he keeps looking over at us. He walks up the stairs, doesn't talk to anybody, doesn't make an effort to go to the office, walks up to the second level, doesn't stop at a door, knock on a door or nothing, starts-keeps-like when he gets to the top level, he is walking back towards the back, which it levels back out where

-2-

you don't have to take stairs.  Just the road goes up to it.

He is still looking at the officers, still doesn't talk to anybody, doesn't stop at any room or anything.  He keeps going, walking back.  He is still looking back at us like this, at which point he comes to the level part up on the top, which is well, you know, a well amount of ways from the office, because the office was back up front.

At that point in time, he was about to make it around the side of the thing, of the building near the back to where I couldn't see, so I pulled up there.  I get out.  I said, come here.  I asked him if he is staying there.  He says no.  I like [sic] do you have a buddy here?  At which time, he said-at first, he said no, and then he looked around and he said yeah, that guy over there.

Security came over there.  The guy who he had said didn't know who he was.  Security came over and said there is a trespass waiver on file.  If he ain't got a room here, he is trespassing at which point, I placed him into cuffs.  I sat him there.  I got his ID out after I patted him down.  All he had on him was some money he said that he had.  I got his ID, ran him through warrants.  He didn't have warrants.  I ran him through his history.  He had a history of not going to court at which point I then walked him back down to where his car was because I had seen him throw something down, and at that point in time, the doors were closed.  They weren't locked, but I looked in the vehicle. Yes, there was a mild tint on it.  You could still see.  It was lit up.  You could see two plastic baggies, and one large baggie over on the passenger side seat of a rock substance.

At that time, I turned on my flashlight to look in there at it, at which time it was what I observed.  I then opened the vehicle and extracted the items.

There was two plastic baggies right there where the gear shifter was, and then there was the large plastic baggie, and also a Crown Royal bag which had other baggies in it.

-3-

I believe it was 308, approximately 307 or 8 grams of crack cocaine, and the rest was powder cocaine. And it did field test positive for a cocaine base.

The Defendant also testified at the motion to suppress hearing regarding the events bringing rise to the indictment:

> Well, I was going down Murfreesboro Road. I was going to go get me a room, and as I got right there at McDonald's, Mr. Fox got behind me. I was headed to the hotel anyway, so I didn't pay no attention. I just went on to the room, so I pulled in my car. He parks over to the side. I get out of my car. I walk up the steps. I look back. My lights are on, so I go back and cut my lights off.

> I walk up. I was going to go and check out if this way, if this place is worth me getting a room, because I've never been there before or anything before I knew anything about it, so before I could get to the top of the hill, Mr. Fox pulls up. He says what are you doing trespassing? I said I'm not trespassing. I'm fixing to get me a room. He said, no, you are trespassing. What you got in that car? I said ain't nothing in my car. What my car got to do with this? He said, well, are you going to give me permission to search that car? I said, no, do you have a search warrant? He said, no, and he snatched my keys out of my hand, put me in the car, doesn't read me no rights, don't tell me I'm under arrest or anything, and he pulls back down to my car, so by this time, I guess the security man comes. I hear him ask him is there any kind of way he could get me for trespass, and he said, yeah, I guess if he don't have a room, so he goes and looks around my car and around my car. I guess it's like, what, 10:30, eleven o'clock that night. It's real dark. He says he sees something sitting on my seat. I was already sitting in the car, but I wasn't handcuffed or anything, so he comes back and tells me I'm under arrest . . . .

Along with his explanation of the events, the Defendant also testified that the tinting on the windows of his car was very dark, "like a limousine," and would not allow anyone to see inside the vehicle as Officer Fox claimed he did. The Defendant also testified that he lived about seven to eight miles

from the motel, that he was seeking a motel room because he and his wife were arguing. He admitted that he may have passed many motels between his home and the Music City Motor Inn but stated that he chose this motel because "you can just jump on the Interstate and get off at Fessler's Lane."

After hearing the evidence, the trial court orally denied the Defendant's motion to suppress, stating its reasoning as follows:

> Basically, what I'm [sic] heard, the testimony from Officer Fox is that he was at this location, observed [D]efendant kind of come there. He doesn't get a room. He walks up and down. He inquires as to whether or not he is trespassing. The security guard says he is trespassing. He doesn't-he has prior indications that he would fail to appear in court; therefore, he was taken into custody, and the officer, in plain view, observed the cocaine.
>
> Now [the Defendant], on the other had, testifies that he is just there looking for a room. He and his wife got into it, none of which makes any sense, especially since Kingview Drive [where the Defendant resides] is some great distance from the Music City Motor Inn, and there are more than ample hotels between Kingview Drive and Music City Motor Inn for him to get a residence; therefore, I find his testimony not very credible.
>
> I'm going to basically deny the motion . . . to suppress. . . .

The trial court subsequently entered a written order denying the motion to suppress.

*State v. Levi Battle, III* No. M2006-00288-CCA-R3-CD, 2007 WL 957207, at *1-3 (Tenn. Crim. App., at Nashville, Mar. 29, 2007), *perm. app. denied* (Tenn. Aug. 13, 2007).

Following a jury trial, the Petitioner was convicted of possession of twenty-six grams or more of cocaine with the intent to sell or deliver, a Class B felony. *See* T.C.A. § 39-17-417(i)(5). The trial court sentenced the Petitioner as a career offender to thirty years in the Tennessee Department of Correction.

### B. Post-Conviction Hearing

The Petitioner filed a petition for post-conviction relief, which he later amended,

alleging he received the ineffective assistance of counsel. At the hearing on his petition, the following evidence was presented: The Petitioner testified he was represented originally by David Collins, ("Counsel Collins"), who represented him at his motion to suppress hearing concerning the stop of his vehicle that led to the charges in this case. He said that, before this suppression hearing, he spoke with Counsel Collins only once or twice at pre-trial hearings. He said Counsel Collins never visited him in jail and never explained to him the basis for his motion to suppress.

The Petitioner testified his car was seized upon his arrest, but he was never given notice about what happened to his car. He said Counsel Collins asked him about the location of his car, and he told Counsel Collins it may be at the car dealership, American Motors, where he purchased the car. Counsel Collins told him that he looked at the dealership for his car but could not find it. Counsel Collins told him the trial judge was going to appoint an investigator to the case who would be able to locate the car. The Petitioner said no private investigator was ever appointed, even though he asked counsel to ask that one be appointed.

The Petitioner said that, because he and Counsel Collins could not locate his car, he was unable to obtain a photograph of his car to present at the suppression hearing. The Petitioner recalled that, in the trial court's order denying his motion to suppress, the trial court stated that it relied upon the photographs of the car in rendering its decision. The Petitioner maintained that no pictures of his car, however, were admitted at the suppression hearing.

The Petitioner said, after the suppression hearing, the trial court appointed him another attorney named Geoff Coston ("Counsel Coston"). The Petitioner identified several letters he had written to Counsel Coston asking about the pictures admitted at the suppression hearing. The Petitioner told Counsel Coston that there were no photographs of his car admitted at the suppression hearing and asked that Counsel Coston bring this to the attention of the trial court. The Petitioner said Counsel Coston never wrote him back.

The Petitioner testified that Counsel Collins never explained to him the term "trespass waiver." There were no pictures of trespass waivers admitted at his hearing. The Petitioner also said neither of his attorneys ever interviewed the security guard involved in this case and neither attorney knew the security guard's identity.

Counsel Collins testified he was appointed to represent the Petitioner in 2003. As part of his representation, he filed a motion to suppress the evidence found in the Petitioner's car. In preparation for the hearing on the motion to suppress, Counsel Collins attempted to find the Petitioner's car or find the person who sold the Petitioner the car, so that he could get an accurate description of the car, including a description of the car's window tint. The

Petitioner told Counsel Collins that he had purchased the car from a lot on Dickerson Road but did not recall which lot. Counsel Collins said he drove down Dickerson road, starting at Trinity Lane, and went lot by lot, up one side of the street and down the other, attempting to find anyone who recalled the Petitioner or the Cadillac involved in this case. Counsel Collins said most employees with whom he spoke said their lot sold too many Cadillacs that fit the description of the Petitioner's car. Further, they said that, because their default and repossession rate was so high, they usually did not actually transfer the titles of sold cars to the new owners, leaving the titles with the dealer. This practice allowed the dealers to more easily repossess the cars.

Counsel Collins said he asked the State to assist him in finding the Petitioner's car in the Fall of 2003 or early 2004, and the State responded that it had released the car to the title holder on October 9, 2002. The State provided him the title holder's name, "American Auto," but Counsel Collins said the cars at dealerships similar to American Auto turn over quickly and that no one at American Auto was interested in helping him.

Counsel Collins said he also attempted to interview the security guard at the motel who allegedly was present when the Petitioner was arrested by Officer Fox. He said, however, that by this time, police had completely shut down the motel, and no one was present at the motel to answer his request. Counsel Collins said he was eventually given the name of the person who had operated the motel, but this person did not return his calls. Counsel Collins believed this person did not respond because he knew police were searching for him.

On cross-examination, Counsel Collins acknowledged that he told the Petitioner that he was going to hire an investigator to help find the car, and he testified that he did, in fact, intend to do so before trial. He said, however, that in the short time that he represented the Petitioner, the Petitioner filed three or four complaints against him with the Board of Professional Responsibility. Counsel Collins said it became clear that the Petitioner was not going to be happy with his representation, so he asked that the trial court relieve him from representing the Petitioner. Counsel Collins agreed he was unable to obtain any photographs of the Petitioner's car, but he requested as much from the police, who informed him that they had not taken any.

Counsel Collins acknowledged that the police officer involved, Officer Fox, testified at the suppression hearing about what the security guard said to the officer. He agreed that this testimony constituted hearsay, but he explained he did not object because the "thrust" of the suppression was that the Petitioner's windows were tinted too dark for the officer to see inside the car.

Counsel Geoff Coston testified he represented the Petitioner after Counsel Collins filed his motion to withdraw, and he was the Petitioner's counsel at trial and on direct appeal. Counsel Coston said that after he was unable to locate the Petitioner's car, he filed a motion asking the trial court to reconsider its ruling on the Petitioner's motion to suppress. Counsel Coston induced the State to sign an agreed order that the State would produce the vehicle, which he said he did for tactical reasons as he was aware the State would be unable to locate the vehicle. Counsel Coston then argued in the motion to reconsider that, because the Petitioner had been incarcerated since his arrest, the car had been under the State's control since the Petitioner's arrest. Further, he argued that, because the State could not produce the car, there should be a presumption that the windows were as he maintained, i.e. tinted so darkly that the officer could not see inside his car at that time of day. Counsel Coston said his motion to reconsider was denied by the trial court.

Counsel Coston agreed that the police found over 300 grams of cocaine in the seat of the Petitioner's car. He said he was able to convince two jurors that the Petitioner was guilty of only simple possession, so the jury compromised and convicted the Petitioner of possession of twenty-six grams of cocaine. He said the Petitioner's potential sentence was, therefore, reduced from sixty years at sixty percent to thirty years at thirty percent.

On cross-examination, Counsel Coston recalled that, in the trial court's order denying the Petitioner's motion to reconsider the trial court's denial of the motion to suppress, the trial court mistakenly stated it relied upon two photographs of the vehicle. Counsel Coston said he did not object to the trial court's reliance specifically on photographs that were not in evidence but implicitly raised this issue by arguing that the State failed to produce the car or any photographs of the car.

The trial court noted that it erroneously stated in a footnote in the order on the motion to reconsider that it had relied, in part, upon photographs of the car. The trial court went on to state that no such mention was made in the original order denying the Petitioner's motion to suppress.

Counsel Coston testified that he renewed his motion to suppress at the close of the State's proof, basing his renewed motion on the absence of any photographs of the car, and the trial court denied his motion. Further, on appeal, he argued that the trial court erred when it denied the Petitioner's motion to suppress.

Based upon this evidence, the post-conviction court dismissed the Petitioner's petition. It is from that judgment that the Petitioner now appeals.

## II. Analysis

The Petitioner filed a petition for post-conviction relief in which he alleged that he received the ineffective assistance of counsel. Specifically, he asserts Counsel Collins only met with him once or twice before the suppression hearing[1] and never explained to him the basis of the suppression motion and his strategy for arguing the motion. Next, the Petitioner claims Counsel Collins was ineffective for failing to hire an investigator, who would have been able to locate his vehicle and find the security guard present at the time of his arrest for trespassing. The Petitioner alleges Counsel Collins was ineffective for failing to object at the suppression hearing to Officer Fox's testimony about what the security guard told him. Finally, the Petitioner also alleges Counsel Coston was ineffective because he failed to object on the record or appeal the trial court's reliance upon photographs introduced by the State that showed the parking lot where the drugs were found but not the car itself.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

First, the [petitioner] must show that counsel's performance was deficient.

---

[1]The Petitioner's brief actually alleges Counsel only met with the Petitioner once or twice "prior to his trial." We note, however, that Counsel only represented the Petitioner through the suppression hearing and that the testimony was, in fact, that Counsel met with the petitioner "maybe once, twice" before the suppression hearing. Therefore, we assume this is the argument that the Petitioner intended to maintain on appeal.

This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (*citing Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (*citing Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

The Petitioner contends Counsel Collins was ineffective because he met with the Petitioner only once or twice before the suppression hearing[2] and never explained to him the basis of the suppression motion or how Counsel Collins intended to approach that motion. We conclude that the Petitioner did not prove by clear and convincing evidence that Counsel was ineffective in this regard. Counsel testified he attempted to find the car before the suppression hearing and asked the Petitioner where he purchased the car. The Petitioner could not provide him the name of the dealership from whom he purchased the car or the date on which he did so, telling him only that he bought it from a dealership on Trinity Lane. The Petitioner testified he informed Counsel where he purchased the car before the suppression hearing. This indicates that the Petitioner knew that Counsel was attempting to locate and photograph the car as part of the Petitioner's evidence at the hearing on the motion to suppress. We conclude that the Petitioner was adequately informed about the goal of the suppression hearing, i.e. to prove that the windows of his car were tinted too dark for Officer Fox to be able to see the drugs on the car seat, and the Petitioner assisted Counsel in attempting to provide information to that end.

The Petitioner claims Counsel Collins was ineffective for failing to find his vehicle or hire an investigator, who would have located his vehicle. First, after reviewing the facts, we agree with the post-conviction court that Counsel Collins was not deficient in this regard. He attempted to locate the car by going to multiple car lots in the area in which the Petitioner said he purchased the car. He asked the State for information about the car and learned that it had been titled and returned to American Motors. With this information, Counsel Collins was still unable to find the car's location, saying that the dealerships said that cars turn over quickly and offered him little assistance. Further, to be entitled to post-conviction relief, the Petitioner must prove that he was prejudiced by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

---

[2]Again, as previously stated, the Petitioner's brief actually alleges Counsel only met with the Petitioner once or twice "prior to his trial." We note, however, that Counsel only represented the Petitioner through the suppression hearing and that the testimony was, in fact, that Counsel met with the petitioner "maybe once, twice" before the suppression hearing. Therefore, we assume this is the argument that the Petitioner intended to maintain on appeal.

-11-

The Petitioner did not locate the vehicle before the post-conviction hearing, and there are still no pictures of the vehicle in evidence. Without any evidence supporting the Petitioner's claim that his windows were so darkly tinted the officer could not see the drugs inside his car, we cannot conclude that the result of the suppression hearing would have been different had Counsel Collins, or an investigator, located his car.

The Petitioner contends Counsel Collins was ineffective for failing to either find the security guard present at the time of his arrest for trespassing or hire an investigator to find the security guard. Again, after reviewing the facts, we conclude that Counsel Collins was not deficient in this regard. Counsel testified the motel had been shut down by police by the time of his investigation. Counsel Collins eventually learned the name of the motel's operator and attempted to contact him on several occasions. The motel's operator did not respond, and Counsel believed this was because police were looking for the operator. Additionally, the Petitioner again fails to demonstrate prejudice. The Petitioner did not offer any testimony from the security guard, without which we cannot conclude that the result of the suppression hearing would have been different.

The Petitioner next alleges Counsel Collins was ineffective for failing to object to Officer Fox's testimony about what the security guard told him, which the Petitioner urges was hearsay. At the suppression hearing, Officer Fox testified about what the security guard said to him. At the post-conviction hearing, Counsel Collins agreed that this testimony constituted hearsay, but he explained he did not object because the "thrust" of the suppression hearing was that the Petitioner's windows were tinted too dark for the officer to see inside the car. We first conclude that the Petitioner did not prove prejudice. In our opinion on the Petitioner's direct appeal, we stated Officer Fox had "a sufficient basis to stop the [Petitioner] and talk to him based upon the officer's observations of the [Petitioner]'s suspicious behavior in the parking lot." *Battle*, 2007 WL 957207, at \*5. We concluded, "The drugs were not found in a search incident to the [Petitioner]'s arrest but rather were found pursuant to the 'plain view' exception to the warrant requirement." *Id*. Accordingly, even had the security officer's testimony about the Petitioner committing criminal trespass been excluded, it would not have affected his lawful detention and the officer's discovery of the drugs.

The Petitioner also alleges Counsel Coston was ineffective because he failed to object on the record or appeal the trial court's reliance upon photographs introduced by the State that showed the parking lot where the drugs were found but not the car itself. In its oral ruling and its written order denying the motion to suppress, the trial court clearly based its ruling on the Officer Fox testimony that, although the windows had a slight tint, he was able to view the contraband through the windows. Counsel Coston filed a motion to reconsider the denial of the motion to suppress, arguing that, because the State could not produce the

-12-

car, the trial court should assume the windows were tinted as darkly as the Petitioner alleged. In the trial court's written order denying this motion to reconsider, it included a footnote[3] that stated that photographs of the vehicle had been admitted at the original hearing, which was not accurate.

Counsel Coston said he did not directly appeal to this Court the issue raised by the trial court's footnote, stating that he implicitly appealed that ruling by arguing to the trial court that the State failed to produce the car or any photographs of the car and by arguing on appeal that the trial court erred when it denied the Petitioner's motion to suppress. We conclude that Counsel Coston's performance was not deficient in this regard. This footnote was clearly a simple mistake by the trial court, which was later acknowledged by the trial court, but which did not affect the trial court's ruling on the motion to reconsider. The issue before the trial court on the motion to reconsider was whether it should presume the Petitioner's windows were tinted as darkly as he maintained because the State could not produce the Petitioner's car or a photograph of his car. Further, on appeal, this Court deferred "to the trial court's finding that Officer Fox's testimony was credible." *Battle*, 2007 WL 957207, at *5. On direct appeal, we never mentioned or considered the trial court's statement in the footnote in its written ruling on the motion to reconsider its denial of the motion to suppress. The Petitioner is not entitled to relief on this issue.

## III. Conclusion

After a thorough review of the record and the applicable law, we conclude that the post-conviction court did not err when it dismissed the Petitioner's petition for post-conviction relief. As such, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

---

[3]That footnote reads in its entirety:

Defendant argues that an examination of the vehicle would show the windows were tinted, rendering the officer unable to view anything inside. The Court notes, however, that photographs of Defendant's car and its tinted windows were admitted at the November 10, 2003, evidentiary hearing on the original suppression motion, and the depiction of these windows was considered by the Court in rendering its ruling, denying Defendant's motion.